MARK E. FERRARIO
Nevada Bar No. 1625
TYLER ANDREWS
Nevada Bar No. 9499
GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
ferrariom@gtlaw.com
andrewst@gtlaw.com

*Counsel for Defendant Groupon, Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LAS VEGAS SKYDIVING ADVENTURES, LLC, <br><br> Plaintiff, <br> v. <br> GROUPON, INC., <br><br> Defendant. | Case No.: 2:18-cv-02342-APG-VCF <br><br> **DEFENDANT GROUPON, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR SPOLIATION SANCTIONS AND SANCTIONS PURSUANT TO THE COURT'S INHERENT AUTHORITY [DKT. 23]** |

Defendant, GROUPON, INC., ("Defendant" or "Groupon"), by and through its undersigned counsel, GREENBERG TRAURIG, LLP, hereby submits this Opposition to Plaintiff's Motion for Spoliation Sanctions and Sanctions Pursuant to the Court's Inherent Authority. This Motion is based upon the pleadings on file herein, the attached memorandum of points and authorities, and any oral argument the Court may permit at the hearing of this matter.

DATED this 23rd day of July, 2019.

                                                     **GREENBERG TRAURIG, LLP**

                                                   */s/ Tyler R. Andrews*
                                                   MARK E. FERRARIO (Nevada Bar No. 1625)
                                                   TYLER ANDREWS (Nevada Bar No. 9499)
                                                   *Counsel for Defendant Groupon, Inc.*

1

ACTIVE 44767098v2

**POINTS AND AUTHORITIES**

I.  INTRODUCTION

To date, discovery in this case has only affirmed what Groupon has asserted from the outset: Plaintiff's trademark and antitrust allegations have no merit whatsoever. Yet, rather than concede defeat, Plaintiff's latest ploy is to bring an unjustified spoliation motion to divert attention from its deteriorating claims and salvage any possible leverage it can against Groupon.

Plaintiff sued Groupon on the twofold theory that (1) Groupon's marketing platform illegally "controls the prices" of the Las Vegas skydiving market; and (2) that Groupon has nefariously embedded Plaintiff's trademark "FYROSITY" into its website metadata with the aim of diverting online customers from Plaintiff to Groupon's affiliates. After this Court allowed Plaintiff to conduct discovery on these issues, Plaintiff has come up with nothing to substantiate either theory.

For example, on the antitrust front, discovery has established that only three southern Nevada skydiving companies had ever marketed their businesses on the Groupon platform at the time Plaintiff filed its complaint (far from the complete market saturation alleged by Plaintiff). More importantly, those skydiving companies have turned their "deals" on and off at different times and maintained full control over the terms, timing, and pricing of all the deals offered to their customers through the Groupon platform.

Similarly, on the trademark front, discovery has confirmed that Groupon never once used the term "Fyrosity" in its keywords or website metadata. In fact, Groupon searched through hundreds of thousands of web pages throughout its online domain and confirmed that the term "Fyrosity" has appeared *nowhere* in the metadata underlying its website. What is more, Groupon confirmed it has never bid on the keyword "Fyrosity" as part of its Search Engine Marketing, nor has it ever used the term "Fyrosity" *in any capacity* as part of its Search Engine Marketing and Search Engine Optimization efforts.

Out of desperation—and faced with a lawsuit it really has no good faith basis to continue pursuing—Plaintiff has now manufactured unfounded allegations of spoliation. Plaintiff's position is based on a misunderstanding (or, worse, a deliberate misstatement) of basic website

operation and metadata principles.  As explained herein, the metadata that Plaintiff accuses Groupon of "destroying" is *dynamic* metadata – metadata created by an end user when he or she enters a search term (in this case "Fyrosity") on the search page of the Groupon website.  While the resulting metadata for that "Search Results" page obviously must contain whatever term was searched by the user, that metadata is transient and is not "Groupon website metadata" in any sense.  It does not underlie the fabric of Groupon's static website, and most importantly, it does not affect in any way search engine results because such pages are not capable of being crawled by search engines.  Thousands of searches by end users are being conducted every minute and the nearly infinite variations of transient "search page" results are not the "Groupon website."  Indeed, the Court has already confirmed this point in its Order staying discovery, distinguishing between Groupon's website and Groupon's search results pages, and finding that "Groupon search results for 'skydive Fyrosity'…"*do not appear to support an infringement claim*" and ordering that "***no further discovery is warranted on this issue at this time***."  ECF 19 at 7 (emphasis added). Plaintiff's entire motion is therefore based on a disallowed and irrelevant premise.

When Plaintiff's counsel spent hours deposing Pankaj Kumar (Groupon's director of Search Marketing) on this topic, he repeatedly and patiently explained these basic website principles to Plaintiff's counsel.  But the explanations apparently fell on deaf ears.  Even so, Plaintiff's apparent confusion on this subject could have been clarified further by Groupon had Plaintiff actually followed local rules and conferred with Groupon before filing this baseless motion.  But Plaintiff was so eager to smear Groupon that it raced straight to court without notice, failing to meet-and-confer and failing to adhere to this Court's specific limitations in the Order to Stay Discovery (ECF No. 19).

For all of these reasons, Plaintiff's motion should be denied and Groupon should be reimbursed for all fees and costs associated with its response to this motion.

II.     BACKGROUND

A.     **Plaintiff's Lawsuit Against Groupon**

Defendant Groupon, through its Groupon.com website, operates an online marketing platform where contracting merchants can offer their customers discount vouchers for various

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

goods, services, or experiences, including skydiving experiences. Groupon is one of many options that local merchants have for marketing services on the internet along with such websites as Google, Facebook, Yelp, and others.

Plaintiff is a company that sells tandem skydiving experiences to consumers in and around Las Vegas, Nevada, under the FYROSITY trademark. Plaintiff sued Groupon, alleging antitrust violations, trademark infringement, and related state-law claims. Plaintiff's antitrust claims allege that southern Nevada skydiving merchants have promoted deals on Groupon's marketing platform with skydiving prices that are somehow anticompetitive and harmful to Plaintiff. Plaintiff's trademark infringement and related claims are based on allegations that Groupon has used Plaintiff's trademark "FYROSITY" in its website metadata.

Relevant here are the trademark claims, which are based on two primary allegations. First, LV Skydiving claims that Groupon's website metadata includes the FYROSITY mark, thus confusing consumers searching for FYROSITY on search engines and leading them instead to competing Groupon Affiliates. Second, LV Skydiving claims that, in response to a public Facebook post on a regional airport's Facebook page questioning whether LV Skydiving was "on Groupon," Groupon responded by posting a link to a page of search results for the term "skydive FYROSITY" in Las Vegas, which accurately states that Groupon has "*No matching deals*" for that term, and instead displays offers from other southern Nevada skydiving merchants.

B. **Groupon's Motion to Dismiss, the Stay of Discovery, and Discovery Thus Far**

Groupon filed a motion to dismiss (ECF No. 9) and a motion to stay discovery pending the resolution of the motion to dismiss (ECF No. 12). Groupon's motion to dismiss is fully briefed and pending ruling by the Court. Groupon's motion to stay discovery was granted but for two narrow exceptions. First, although the Court indicated that it had "substantial concerns" regarding the legitimacy of Plaintiff's antitrust allegations of Groupon's control over prices or competition within the market, limited discovery was permitted as to "who sets the prices that appear on Groupon's website."[1] *See* ECF No. 19, at 5. Second, and relevant here, the Court agreed with

---

[1] Dispositive discovery has now been conducted regarding this issue, including a 30(b)(6) deposition. At this point it cannot be reasonably disputed that Groupon's various affiliates, and not Groupon itself, are responsible for setting customer prices on the Groupon website.

4

1  Groupon that the very search results page at issue here would *not* support trademark infringement
2  liability against Plaintiff, and therefore stayed all discovery as to Groupon's post on Facebook, the
3  resulting Groupon search results page, and all related state law claims. *Id.* at 7 (citing *Multi Time*
4  *Mach. v. Amazon.com, Inc.*, 804 F.3d 930, 933 (9th Cir. 2015) in finding that "Groupon's search
5  results for 'skydive Fyrosity' do not appear to support an infringement claim" as "no reasonably
6  prudent consumer accustomed to shopping online would likely be confused as to the source of the
7  products.") The Court permitted limited discovery only as to "any use of LV Skydiving's mark in
8  Groupon's website metadata" and found that "no further discovery is warranted on this [search
9  results] issue at this time." *Id.* at 7-8.

10  Despite the limited nature of discovery permitted, Plaintiff has aggressively engaged in
11  expansive requests and deposition topics that stretch, if not exceed, the Stay Order's clear
12  boundaries. *See* Declaration of Tyler R. Andrews Esq., ("Andrews Decl."), attached hereto as
13  **Exhibit A**, at ¶ 5. For instance, Plaintiff has requested "any and all Documents that in any way,
14  in whole or in part, Concern LV Skydiving's Mark," "any and all Documents that in any way, in
15  whole or in part, depict the text "fyrosity," and "any and all Documents (at any time from January
16  1, 2016 until the present) that in any way, in whole or in part, Concern [Groupon's] Promotional
17  Efforts."[2] *Id*. at ¶ 6. The scope of these requests, on its face, far exceeds the "use of LV
18  Skydiving's mark in Groupon's website metadata," allowed by the Court. Plaintiff has also taken
19  two 30(b)(6) depositions, questioning Groupon representatives for nearly seven hours on topics
20  well beyond those outlined in the Court's clear stay order. For example, Plaintiff spent a
21  substantial portion of the multi-hour deposition of Groupon's Search Marketing director Pankaj
22  Kumar questioning him about the never-before-disclosed, unauthorized and self-serving "expert
23  report" that Plaintiff relies upon in support of this motion. *See, e.g.*, Plaintiff's Exhibit 7, ECF No.
24  23-7, pp. 52:21-89:9; Andrews Decl. at ¶ 7. Tellingly, the improper expert reports introduced

---

[2] Promotional Efforts was defined as "Your online promotional efforts Concerning the Market, including, without limitation, search-engine optimization techniques (including, without limitation, use of metadata embodiments), and keyword advertising." The "Market" is defined in the complaint as, essentially, tandem skydiving services in the Las Vegas area. *See* ECF No. 1, at ¶ 11.

during the Kumar deposition and attached to Plaintiff's motion (Exhibit 8) relate exclusively to the very "Groupon search results" pages that were prohibited as topics of discovery by the Court. *See* ECF No. 19 at 8; Andrews Decl. at ¶ 8.

Despite this gamesmanship, Groupon has made every effort to comply with Plaintiff's requests – even when far beyond the scope of the order – in the interest of cooperation and good faith and to avoid unnecessary court involvement.  *See* Andrews Decl. at ¶ 9.  In fact, Groupon's counsel has participated in at least three separate meet and confer conferences and exchanged numerous communications with Plaintiff's counsel regarding the scope and manner of discovery. *See* Andrews Decl., at ¶ 10.   Plaintiff's counsel has never raised the issue of "spoliation" or its intent to seek sanctions against Groupon during these conferences.  *Id*.

### C. A Brief Primer on Website Metadata

#### 1. *What is Website Metadata?*

To fully understand the flaws in Plaintiff's spoliation argument, Groupon submits a brief primer on website metadata for the Court's convenience.  Metadata is defined as "data that provides information about other data."  *See* https://www.merriam-webster.com/dictionary/metadata.  In the internet context, metadata is data that provides information about what is on a web page – for example, the title of the webpage, a description of the page, and other information about the webpage.

#### 2. *Static Websites Versus Dynamic Websites*

There are two types of websites: static and dynamic.  In a static website, all of the code is pre-written and delivered directly from the website owner's server to the end-user's browser in exactly the same fashion.  The official website for the United States District Court, District of Nevada, is a good example of a static website.  The content of the pages and the underlying metadata is likely stored on the server of the US District Court and delivered in that same fashion to anyone who accesses the District of Nevada URL.

A dynamic website, by contrast, varies based on inputs from the user.  A search engine website is an example of a primarily dynamic website.  Some of the code and metadata for the website's foundation may be pre-written and stored, but the search results pages that appear after

someone enters a search in the search bar are constructed with scripting created on the user's end based on the terms the user has searched for. For example, there are virtually infinite possible variations of Google search results pages, all with different dynamic metadata depending on what the user entered in the search bar.

**D. Groupon's Website**

Groupon's website contains both static and dynamic components. For example, Groupon has hundreds of thousands of pages with static components associated with the specific deals offered merchant categories, terms and conditions, etc. The code and underlying metadata for these pages are stored on Groupon's servers and delivered in the same fashion to end users, regardless of how they are accessed. For example, if you searched in Google for "Groupon Las Vegas Dinner in the Sky," one of the results would likely be for Groupon's static webpage promoting the Top of the World Restaurant in the Stratosphere Hotel.

In addition to these static webpages, Groupon also has a search bar on its webpages that allows Groupon customers to perform dynamic searches for specific products, merchants, deals, or categories:



All corresponding search results pages from these user searches are *dynamic,* and are constructed using the search query information provided by the end user.

Put simply, when a person performs a search on Groupon, the searched-for term appears, automatically and by necessity, in the dynamic metadata for the results page generated by the search. Below is a clip of the purported evidence of "fyrosity" appearing in Groupon's metadata, taken from Plaintiff's Exhibit 4:

```
<meta property="og:title" content="skydive Fyrosity | Groupon">

<meta property="og:url" content="https://www.groupon.com/browse/las-
vegas?lat=36.17&amp;lng=-
115.14&amp;administrative_area=NV&amp;locality=Las+Vegas&amp;address=Vegas,+NV&amp;query=s
kydive+Fyrosity&amp;division=las-vegas&amp;locale=en_US&amp;linkId=55187837">
```

*See* ECF No. 23-4.  The reason that the term "skydive Fyrosity" appears here is *not* because Groupon purposefully placed the term on its website to confuse customers or drive search engine optimization.  Rather, the term appears solely because the particular user *chose to search for the term on the Groupon website*.  Anyone can obtain literally any phrase in the dynamic metadata they want to "appear" on a Groupon search results page by simply typing the phrase into the search box.  For example, when viewing the metadata for the search results on the Groupon website for the exact phrase "baseless spoliation motions," the pattern is the same[3]:

```
<meta property="og:title" content="baseless spoliation motions | Groupon">

<meta property="og:url" content="https://www.groupon.com/browse/las-
vegas?lat=36.17&amp;lng=-
115.14&amp;locality=Las+Vegas&amp;administrative_area=NV&amp;query=baseless+spoliati
on+motions&amp;address=Las+Vegas%2C+NV&amp;division=las-
vegas&amp;locale=en_US">
```

These terms are generated and appear in the metadata *solely as a result of the search being performed*.  This is not part of the Groupon metadata of its website.  Importantly, Groupon search results pages are *not* capable of being crawled by search engines like Google and therefore could not drive search traffic towards Groupon.  Thus, Groupon is not any more likely to appear in a search engine query for "baseless spoliation motions" just because Groupon's counsel searched that term for the purpose of responding to this motion.

This Court has already recognized that the only relevant data at issue is "Groupon's website metadata," meaning the metadata actually existing on Groupon's servers and underlying its static webpages.  Dynamic metadata resulting from a search of a fanciful term by an end user is merely temporary, it resides only in the end user's web server.  Groupon cannot possibly "possess" all such metadata, and there is nothing for Groupon to preserve or destroy.

---

[3] This experiment can be replicated by going to the Groupon webpage and typing a term into the search bar.  When the results page appears, right click on the page and go to "View source."  This will show the dynamic page source code, and whatever term was searched for will appear in the same metadata locations as the terms discussed here.  These terms have no relation whatsoever to the metadata used on Groupon's primary static website.

8

ACTIVE 44767098v2

### E. Groupon's Metadata Searches Reveal No Use of FYROSITY.

As Groupon's 30(b)(6) representative explained, Groupon "searched for the term "Fyrosity" in all of [Groupon's] metadata" to see if it was present. *See* Transcript of 30(b)(6) Deposition of Pankaj Kumar for Groupon, Inc., June 3, 2019 ("Kumar Transcript"), attached to the Andrews Decl. as **Exhibit 1**, at 39:6-7. Kumar confirmed without exception that such metadata did not exist. The reason is simple. As seen above, the code in Plaintiff's "Salient Example" is merely temporary; the "code is picking whatever is written in the search bar by the customer. So this is not what we have inserted into our metadata, but this is picked…this is the way this code works. If I put my name over the search bar, then my name will appear over here." *Id*. at 52:14-20. As he explained, it is the *search terms themselves* that are inserted into the metadata by virtue of the search. He reiterated the same later in the deposition:

> Q: And therefore, at one point in time, that search content has to appear in Groupon's database, correct?
>
> A: No. It's not going anywhere in the [Groupon website] database. It's just – it stays there, and then it's closed, and then it's gone.
>
> Q: Stays where?
>
> A: On the metadata, it comes temporarily and then goes away.
>
> Q: Okay. So it goes temporarily into the metadata?
>
> A: When somebody is searching for that particular term, then it goes into that. Search for my name, it will go there, and it is not going anywhere or it's not getting stored anywhere.

*See* Kumar Transcript, at 78:2-15 (objection omitted). In short, a consumer search for any term at all will temporarily appear in the metadata of that particular search results page.

### F. The Link to Search Results Does Not Support Plaintiff's Spoliation Argument.

Plaintiff makes much of the fact that this case involves the posting of *a link* on Facebook to search results, not merely a consumer search. Plaintiff is apparently arguing that because this search query link can be clicked on and re-run from the Facebook link (which, in turn, creates an additional "linkID" in the source code), there must be instances of metadata that permanently exist somewhere on the internet. However, Groupon's 30(b)(6) representative debunked this very issue:

Q: And are you saying, then, that the existence of the Fyrosity text only will arise if someone clicks into that link on Facebook? A: Yeah. *See* Kumar Transcript, p. 81:20-23. In fact, the representative explained that he and his team had checked the archival logs for any uses of Fyrosity, but that it wasn't there because that portion of the code (containing the search term "Fyrosity") was temporary; the line of code with "fyrosity" in it goes away when the page is closed. *See id.*, at 100:7-102:3.

Indeed, the same type of experiment can be performed using a link to a search as opposed to a search. An emailed link to a search for "improper discovery tactics"[4] on Groupon led to a Groupon search results page that included the following source code:

```
<meta property="og:title" content="improper discovery tactics | Groupon">
<meta property="og:url" content="https://www.groupon.com/browse/las-vegas?lat=36.17&amp;lng=-115.14&amp;query=improper+discovery+tactics&amp;address=Las+Vegas%2C+NV&amp;division=las-vegas&amp;locale=en_US">
```

Again, this is temporary dynamic metadata that exists simply by virtue of the search, and exists nowhere within Groupon's actual website metadata.

Put another way, the link at issue in this lawsuit simply recreates the search from scratch. Other than identifying that the search was re-created from a link, there is no difference in output between clicking the link or manually searching for "Skydive Fyrosity" in "Las Vegas" from within Groupon's search bar. Of note, no metadata is "destroyed" by clicking the link; rather, the resulting dynamic metadata (including the temporary "skydive fyrosity" term) can be accessed to this day by merely clicking the link again.

In any event, as noted above, this Court expressly stayed discovery as to the trademark allegations relating to the Facebook link and the resulting Groupon search results. *See* ECF No. 19, at 7. Accordingly, this motion – which is based entirely on whether permanent metadata underlies the Facebook link – is both procedurally and substantively improper.

---

[4] The link was: https://www.groupon.com/browse/las-vegas?lat=36.17&lng=-115.14&query=improper+discovery+tactics&address=Las+Vegas%2C+NV&division=las-vegas&locale=en_US.

## III. ARGUMENT

### A. Plaintiff's Motion Should Be Denied Outright Because Plaintiff Failed to Meet and Confer on the Alleged Spoliation Issue.

Because Plaintiff failed to meet and confer before filing the instant discovery motion, the motion should not be considered. Pursuant to LR 26-7, discovery motions will not be considered unless the movant (1) has made a good faith effort to meet and confer as defined in LR IA 1-3(f) before filing the motion, and (2) includes a declaration setting forth the details and results of the meet-and-confer conference about each disputed discovery request. Here, Plaintiff never informed Groupon or its counsel that it believed spoliation was at issue in any form.[5] Indeed, the rationale for a meet-and-confer in this situation is undeniable: Plaintiff apparently believes that Groupon has relevant metadata that it has not disclosed through discovery. Rather than running to the Court with a needless incendiary sanctions motion, Plaintiff could have simply discussed the issue with Groupon, clarified whether or not Groupon is intentionally withholding certain forms of metadata, and worked towards an acceptable resolution. Plaintiff, however, did not even request a meet-and-confer before accusing Groupon of bad faith conduct. Instead, Plaintiff filed this surprising motion as a sandbagging tactic, made even more unreasonable given that Plaintiff *has* met and conferred

---

[5] Although the District of Nevada has sometimes held that sanctions motions arising out of discovery disputes are not subject to meet and confer requirements, *see, e.g.*, *Barnum v. Equifax Info. Servs., LLC*, 2018 U.S. Dist. LEXIS 115543 (D. Nev. 2018) (relying on cases involving Rule 37(c) and (d)), this does not apply to motions involving spoliation under Fed. R. Civ. P. 37(e). As several federal courts have confirmed, spoliation is a discovery issue requiring a meet and confer. *See Travelers Prop. Cas. Co. of Am. v. Mountaineer Gas Co.*, No. 2:15-cv-07959, 2018 U.S. Dist. LEXIS 43208, at *16-17 (S.D. W. Va. Mar. 16, 2018) ("Spoliation motions are the product of discovery disputes…requir[ing] the parties to certify that they conferred in good faith."); *Davila v. Teeling*, 2017 U.S. Dist. LEXIS 181454, at *2 (E.D. Wis. Nov. 2, 2017) (noting that "[t]here are a number of potential procedural problems with Plaintiff's motions, including a failure to meet and confer with opposing counsel about spoliation…"); *Lafountaine v. Reishus*, 2014 U.S. Dist. LEXIS 120357, at *77 (D. Minn. July 16, 2014) (noting party had failed to satisfy meet and confer requirement prior to filing a spoliation motion); *see generally Aspen Med. Prods. v. United Airlines*, 2016 U.S. Dist. LEXIS 184978, at *1 (C.D. Cal. Jan. 13, 2016) (taking spoliation motion off calendar and vacating hearing for failure to comply with local rule requiring conference before filing); *Lopez v. Vidljinovic*, 2016 U.S. Dist. LEXIS 111295, at *13 (N.D. Ill. Aug. 22, 2016) ("If Plaintiff has a spoliation argument to assert, he should meet-and-confer with defense counsel, and, if resolution proves elusive, file a motion.").

1  with Groupon's counsel on several other discovery issues, all of which were resolved without Court
2  involvement as a result. As such, Plaintiff's instant motion is improper and should be rejected.

### B. Plaintiff's Motion Should be Denied Because Plaintiff has Not Met its Burden as to Spoliation.

Even if this Court reaches the merits of the motion, Plaintiff has failed to demonstrate any evidence of Groupon's alleged spoliation. Spoliation is the destruction of, alteration of, or failure to preserve evidence. *See, e.g.*, *Smith v. Wal-Mart Stores, Inc.*, 2014 U.S. Dist. LEXIS 83005, at *14 (D. Nev. June 17, 2014) (Ferenbach, M.J.) ("Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."). As of 2015, Federal Rule 37(e) provides the relevant standard for sanctioning such conduct; given both the severity of the accusation and the severity of the effect of spoliation on a case, courts treat it with great caution.

As an initial matter, "before a court will sanction a party for spoliation of relevant evidence, the moving party must demonstrate that the relevant evidence existed." *See Garcia-Garrido v. Outback Steakhouse of Fla., LLC*, 2018 U.S. Dist. LEXIS 90192, at *12-13 (D. Nev. May 30, 2018). A court may then impose sanctions under Rule 37(e) only if it finds "(1) [the party] failed to preserve ESI 'that should have been preserved' in anticipation or conduct of litigation; (2) the information was lost because [the party] failed to take reasonable steps to preserve it; (3) the ESI cannot be restored or replaced; and (4) the plaintiffs were prejudiced by the loss." *Small v. Univ. Med. Ctr.*, No. 2:13-cv-0298-APG-PAL, 2018 U.S. Dist. LEXIS 134716, at *236-37 (D. Nev. July 31, 2018). Only if *all* of these prerequisites are met may a court issue sanctions, and even then, those sanctions must be no greater than necessary to cure the actual prejudice caused by the loss of evidence. *Id*. The most severe sanctions, such as the adverse inferences sought by Plaintiff, may be imposed only if the Court finds that the party acted with intent to deprive. *Id*. Here, despite admitting that it bears the burden of proof (ECF No. 23, at 5), Plaintiff fails to meet a single necessary requirement to establish spoliation. As such the motion should be denied.

***First***, Plaintiff has come forward with nothing indicating that there was any use of FYROSITY in Groupon's searchable website metadata. *See Putscher v. Smith's Food & Drug*

*Ctrs.*, 2014 U.S. Dist. LEXIS 85024, at *18 (D. Nev. June 20, 2014) (Ferenbach, M.J.) (denying motion for spoliation sanctions where the plaintiff had come forward with no evidence that certain surveillance footage ever existed to begin with); *Smith v. Wal-Mart Stores, Inc.*, 2014 U.S. Dist. LEXIS 83005, at *16 ("Smith's motion for spoliation sanctions is meritless. There is no indication that relevant evidence ever existed."). Plaintiff's ignorance as to the difference between dynamic and static webpages can certainly not serve as the basis for "spoliation" against Groupon. Indeed, Plaintiff's only purported evidence on this point -- temporary dynamic webpage metadata generated by a search query – has no connection whatsoever to actual instances of FYROSITY in use on Groupon's website servers. As explained above, Groupon's 30(b)(6) representative testified that this metadata does not exist, and that search terms are temporary and therefore not stored on Groupon web servers.

Given these facts, the false premise underlying Plaintiff's entire motion falls apart. As one federal court remarked, a court "cannot simply *assume* that, because [the plaintiff] is in possession of certain emails between [the defendant] and [the plaintiff] that [the defendant] did not produce in this case, that other e-mails between the companies or internal [defendant] emails must have existed and were not produced." *See Point Blank Sols., Inc. v. Toyobo Am., Inc.*, 2011 U.S. Dist. LEXIS 42239, at *67 (S.D. Fla. Apr. 5, 2011) (emphasis in original); *see generally Epstein v. Toys-R-Us Del., Inc.*, 277 F. Supp. 2d 1266, 1276-77 (S.D. Fla. 2003) (failure to produce video of incident was not evidence that the video ever existed or had subsequently been destroyed, as would be required for a claim for destruction of the tape). Here, no data was destroyed; the link is still active and can be clicked again at any time.

To bolster its position, Plaintiff relies on an improper 27-page supplemental "expert report" which responds to Groupon's 30(b)(6) witness' testimony and hypothesizes that some theoretical use of the term "Fyrosity" might exist on Groupon's web server log files as a result of the Facebook link and resulting search results page. *See* ECF No. 23, Exhibit 8, at ¶ 35. As an initial matter, the entire report should be excluded as it relates exclusively to the very discovery topics prohibited in this Court's stay Order. *See* ECF No. 19 at 7-8. Yet even setting aside the report's blatant impropriety, and even assuming that Plaintiff's "expert" is correct that some other FYROSITY

13

dynamic metadata might exist undiscovered somewhere out in the vast internet ether, this would not amount to spoliation. *See, e.g.*, *Garcia-Garrido*, 2018 U.S. Dist. LEXIS 90192, *12-13 (argument that defendant "destroyed evidence" by "failing to conduct a more thorough investigation" rejected and spoliation motion denied). In fact, Plaintiff has not even *alleged* that Groupon "destroyed" the supposed metadata at issue here. At the very most, Plaintiff could have (and should have) brought a motion to compel any additional information that it believes exists but that has not yet been produced.

***Second***, Plaintiff has failed to show that any information was lost *because Groupon failed to take reasonable steps to preserve it*. Indeed, Plaintiff has no evidence that any information was "lost," in the first place, as Plaintiff clearly maintains the very same "Salient Example" it alleges was "disclaimed" by Groupon. But even accepting Plaintiff's argument that Groupon somehow destroyed or altered the very evidence that remains in Plaintiff's own possession, Plaintiff certainly has no evidence that Groupon failed to take reasonable steps to "preserve" any dynamic webpage metadata, which by its very nature cannot be "owned" by Groupon or "preserved" in any meaningful sense. Likewise, Plaintiff has not shown that if information *was* lost, it cannot be easily restored or replaced (which here can be done by simple typing in the same query into the Groupon.com search box, as explained above). Failure to demonstrate this requirement is fatal to Plaintiff's motion.

***Third***, even if Plaintiff's allegations somehow gave rise to spoliation, Plaintiff has not stated how it was prejudiced by the alleged loss. Plaintiff argues that it need not show prejudice where there was an "intent to deprive," but again, Plaintiff has not demonstrated how or why Groupon "intended to deprive" Plaintiff of anything. At most, Plaintiff's entire motion is based on a semantic disagreement over the term "metadata," caused by Plaintiff's misunderstanding of simple website operation – again, one that could have likely been resolved had Plaintiff bothered to meet and confer before filing a motion accusing Groupon of bad faith spoliation.

Further, Plaintiff could not possibly suffer prejudice here because even assuming Plaintiff's position was accurate, dynamic webpage metadata *cannot give rise to liability for trademark infringement*. Even in the rare instances where courts have found liability for infringement based

on metadata use in the past, the cases are largely set during the internet's early days where competitors sometimes *intentionally* placed metatags on their site for the very purpose of *confusing consumers*. A competing cola company, for example, might embed the word "PEPSI" as a meta-tag in its website code to "trick" search engines into returning its page as a result when a consumer searched for "Pepsi" instead. As explained in Groupon's motion to dismiss, this tactic died off years ago, and no modern search engines continue to use metatags for this purpose. *See, e.g.*, *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1146 n. 3 (9th Cir. 2011) ("Modern search engines such as Google no longer use metatags. Instead they rely on their own algorithms to find websites.").

But even assuming this practice was still in use, the dynamic "metadata" at issue in Plaintiff's motion has nothing to do with the intentional placement of a competitor's trademark in the underlying code of Groupon's website. Rather, the alleged metadata in Plaintiff's "Salient Example" is *incidentally* generated as a result of the posted search query. It would be literally impossible for Groupon (or any search engine, for that matter) to control the various search queries entered in order to create the dynamic metadata at issue. It certainly could not "place" such metadata to "confuse" customers regarding LV Skydiving or its trademarks.

For all of the above reasons, this Court should find that no spoliation occurred, and therefore deny Plaintiff's motion for spoliation sanctions.

C. **Plaintiff's Request for Sanctions Against Groupon Should Be Denied.**

Plaintiff asks for a panoply of extraordinary relief for Groupon's alleged "spoliation": not only attorneys' fees, costs, and monetary sanctions, but also an adverse inference and a presumption that Groupon is liable for all of Plaintiff's intellectual-property related claims. Needless to say, these requested sanctions are baseless and unwarranted.

Plaintiff is limited to seeking sanctions under Rule 37.[6] Rule 37(e) provides a two-part framework for sanctions. Under Rule 37(e)(2), it is "***only upon finding*** that the party acted with

---

[6] Plaintiff requests sanctions both under Rule 37 and the court's inherent authority. Neither are appropriate for the reasons stated herein, but after the 2015 amendments to Rule 37, use of the inherent authority for spoliation sanctions regarding ESI is expressly foreclosed. *See* Advisory Committee Notes, Fed. R. Civ. P. 37 (explaining that because the rule now authorizes specific

15

ACTIVE 44767098v2

the intent to deprive" the other party of the information's use in litigation that the Court may order the "severe" sanctions of a presumption "that the lost information was unfavorable to the party that lost it, permissive or mandatory instruction to the jury that the information was unfavorable to the party, or the dispositive sanctions of dismissal or default." *See* Fed. R. Civ. P. 37(e)(2) (emphasis added); *Small*, 2018 U.S. Dist. LEXIS 134716, at *233. "Intent to deprive" does not encompass negligence or even gross negligence. *See* Advisory Committee Notes to Rule 37. Plaintiff has not come close to meeting this high standard here. *See Gaina v. Northridge Hosp. Med. Ctr.*, 2018 U.S. Dist. LEXIS 223852 at *13-15 (C.D. Cal. Nov. 21, 2018) (court found "no intent to deprive" defendant and no basis to impose the "harsh" and "severe" sanctions available under Rule 37(e)(2) even when plaintiff sold cell phone containing important text messages relevant to case); *Porter v. City & Cty. of S.F.*, 2018 U.S. Dist. LEXIS 151349, at *12-13 (N.D. Cal. Sep. 5, 2018) (deletion of recorded phone call pursuant to data retention policy, despite having received a preservation notice, was insufficient to trigger 37(e)(2) where there was no evidence that the defendant intentionally spoliated the recording.)

Accordingly, even if spoliation had occurred here, sanctions would be limited to those authorized under Rule 37(e)(1). That provision simply allows the court to, "upon finding prejudice" to the moving party, "order measures no greater than necessary to cure the prejudice." *See* Fed. R. Civ. P. 37(e)(1). Here, Plaintiff has not demonstrated *any* prejudice as a result of Groupon's allegedly incomplete search for FYROSITY metadata, so it is impossible to know what sanctions could even theoretically "cure" the alleged wrongdoing. Where there has been no prejudice, sanctions are not warranted. *Hernandez v. Tulare Cty. Corr. Ctr.*, 2018 U.S. Dist. LEXIS 21159, at *17 (E.D. Cal. Feb. 7, 2018) (sanctions not warranted where county deleted video evidence of plaintiff's injury, where the plaintiff was not prejudiced by the loss). As neither prong

---

measures a court may employ if information that should have been preserved is lost, the rule "forecloses reliance on inherent authority or state law to determine when certain measures should be used."); *see also Newberry v. Cty. of San Bernardino*, 750 F. App'x 534, 537 (9th Cir. 2018) (unpublished disposition) (noting that Rule 37(e) was the proper vehicle for spoliation sanctions motions post-2015 amendments).

16

ACTIVE 44767098v2

of Rule 37(e) has been met, this Court should deny sanctions even assuming Plaintiff's motion held merit..

### D. This Court Should Award Groupon Reimbursement of Fees and Costs from Plaintiff.

This Court should award Groupon sanctions against Plaintiff pursuant to LR IA 11-8 covering all fees and costs necessary in responding to the motion. The Court may, "after notice and an opportunity to be heard, impose any and all appropriate sanctions on an attorney or party who…fails to comply with these rules; or…fails to comply with any order of this court." *See* LR IA 11-8. Further, "…the court may impose appropriate sanctions under LR IA 11-8 for a party's failure to comply with the meet-and-confer requirement." *See* LR IA 1-3.

Sanctions are warranted here. Not only did Plaintiff fail to meet-and-confer, Plaintiff violated this court's clear order limiting discovery by engaging in prohibited expert discovery, and compounded this error by filing a needless motion accusing Groupon of bad faith misconduct based solely on Plaintiff's own flawed understanding of dynamic website metadata and how the internet actually works. Accordingly, sanctions in the amount of the attorneys' fees and costs incurred by Groupon in responding to this baseless spoliation motion are warranted.

### IV. CONCLUSION

In light of the foregoing, Groupon respectfully requests that this Court DENY Plaintiff's motion for sanctions, and award Groupon all reasonable attorney's fees and costs incurred in responding to Plaintiff's unnecessary and wasteful motion.

DATED this 23rd day of July, 2019.

**GREENBERG TRAURIG, LLP**

*/s/ Tyler R. Andrews*
MARK E. FERRARIO
Nevada Bar No. 1625
TYLER ANDREWS
Nevada Bar No. 9499
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135

*Counsel for Defendant Groupon, Inc.*

17

ACTIVE 44767098v2

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that on the 23rd day of July, 2019, a true and correct copy of the foregoing ***Defendant Groupon, Inc.'s Opposition to Plaintiff's Motion for Sanctions*** was filed electronically via the Court's CM/ECF system. Notice of filing will be served on all parties by operation of the Court's EM/ECF system, and parties may access this filing through the Court's CM/ECF system.

                                                */s/ Andrea Lee Rosehill*
                                                An employee of GREENBERG TRAURIG, LLP

ACTIVE 44767098v2

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002