UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LAS VEGAS SKYDIVING ADVENTURES LLC,<br><br>          Plaintiff,<br><br>v.<br><br>GROUPON, INC.,<br><br>          Defendant. | Case No.: 2:18-cv-02342-APG-VCF<br><br>**Order (1) Granting Defendant's Motion for Summary Judgment; (2) Denying Plaintiff's Motion for Leave to File Late Objection; (3) Denying Plaintiff's First Motion for Reconsideration; and (4) Denying Plaintiff's Second Motion for Reconsideration**<br><br>[ECF Nos. 91, 104, 105, 109] |

Plaintiff Las Vegas Skydiving Adventures LLC (LVSA) sued Groupon, Inc. (Groupon) alleging antitrust violations, trademark infringement, and Nevada common law claims for misappropriation of commercial property and unjust enrichment. I previously granted in part Groupon's motion to dismiss, dismissing with prejudice LVSA's two antitrust claims. Groupon now moves for summary judgment on the three remaining claims. LVSA moves for reconsideration of my dismissal of its antitrust claims. LVSA also moves for reconsideration of Magistrate Judge Ferenbach's order that denied (1) its two motions to compel competent Federal Rule of Civil Procedure (FRCP) 30(b)(6) deponents and (2) its renewed motion for spoliation sanctions.[1] Lastly, LVSA moves for leave to file a late objection to Magistrate Judge Ferenbach's order denying its motion to strike a rebuttal expert report.

I grant Groupon's motion for summary judgment. Assuming that LVSA has a protectible ownership interest in the Fyrosity mark and that Groupon used the mark, LVSA's trademark infringement claim fails as a matter of law because Groupon's use does not give rise to a

---

[1] I treat LVSA's motion for Magistrate Judge Ferenbach to reconsider his ruling denying the three underlying motions as an objection to Judge Ferenbach's ruling.

likelihood of consumer confusion.  And LVSA presents insufficient evidence of a substantial investment in the development of its property and of a benefit conferred on Groupon such that a reasonable jury could find common law appropriation or unjust enrichment, respectively.  I also deny LVSA's motion for reconsideration of my order dismissing its antitrust claims.  LVSA's new evidence does not alter my previous ruling that the parties do not compete in the same market and their services are not reasonably interchangeable.

My rulings on Groupon's motion for summary judgment and LVSA's motion for reconsideration of dismissal effectively moot the remaining discovery-related motions because no claims remain and these pending motions involve only the metadata dispute and do not relate to consumer confusion, investment in the mark, or benefits conferred.  But even if claims remained, these discovery-related motions fail on the merits because none of Magistrate Judge Ferenbach's rulings was clearly erroneous or contrary to law.  I therefore deny LVSA's motion for leave to file a late objection to Judge Ferenbach's ruling denying LVSA's motion to strike a rebuttal expert report, and I deny LVSA's motion for reconsideration of Judge Ferenbach's rulings denying two motions to compel and a renewed motion for spoliation sanctions.

I. **BACKGROUND**

LVSA "offers services to individuals who wish to have the experience of jumping out of an airplane while tethered to an experienced parachutist." ECF No. 97-1 at 3.  It offers these skydiving services in and around Las Vegas, Nevada under the service mark "FYROSITY." *Id.*; ECF No. 1-1 at 2-3.  Groupon provides discount vouchers for use with affiliated businesses, including skydiving services. ECF Nos. 91 at 9; 97 at 2.  LVSA is not affiliated with Groupon. ECF No. 91-8 at 5.

In 2018, the Mesquite Airport Facebook profile shared a video originally posted on LVSA's Skydive Fyrosity Facebook profile. ECF Nos. 91-5 at 2; 97-1 at 3. The video congratulated one of LVSA's customers on her first tandem skydive with the company. *Id.* The Mesquite Airport profile captioned the share: "Closer to Vegas. Don't know if it's on Groupon," tagging Groupon's Facebook profile in the process. *Id.* Groupon then commented on the shared post, stating in relevant part: "Here is a link to all the skydiving Groupon deals from Vegas . . . . Hope you'll find something for you!" *Id.* at 3. Groupon's comment included a hyperlink to a page on Groupon's website that generates search results for the search term "skydive Fyrosity." *Id.*; ECF No. 91-7 at 2. Groupon's results page displays the search term "skydive Fyrosity" (1) in the search bar at the top of the page; (2) on the left side of the screen where a consumer can filter and refine their search and view "breadcrumbs" tracking current search criteria; and (3) below an advertisement banner but above the search results in a header that reads, "results for 'skydive Fyrosity.'" ECF No. 91-7 at 2. Below the header, some text reads: "No matching deals. You may also like . . . ." *Id.* Below that message, the page displays skydiving offers from other service providers in the area. *Id.* Shortly after Groupon commented on the shared Facebook video, LVSA's Skydive Fyrosity profile also commented, stating in relevant part, "Skydive Fyrosity is not on Groupon and will never be. . . . The link [s]hared by Groupon is MISLEADING! When you click you will not see Skydive Fyrosity deals!" ECF No. 91-5 at 3.

LVSA sued Groupon for antitrust violations, trademark infringement, and Nevada common law claims for misappropriation of commercial property and unjust enrichment. ECF No. 1. I dismissed LVSA's antitrust claims. ECF No. 30. LVSA bases its remaining claims on Groupon's Facebook comment containing the hyperlink and on the linked "skydive Fyrosity" results page on Groupon's website. ECF No. 91-8.

After discovery closed, LVSA moved to strike Groupon's rebuttal expert report, twice moved to compel competent FRCP 30(b)(6) deponents, and filed a renewed motion for spoliation sanctions. ECF Nos. 78; 84; 87; 96. Magistrate Judge Ferenbach denied all four motions. ECF No. 103.

Groupon now moves for summary judgment on LVSA's remaining claims of trademark infringement, misappropriation, and unjust enrichment. ECF No. 91. LVSA moves (1) for reconsideration of my order dismissing its antitrust claims under the Sherman Act; (2) for leave to file a late objection to Judge Ferenbach's order denying its motion to strike; and (3) for reconsideration of Judge Ferenbach's order denying its motions to compel and its renewed motion for spoliation sanctions. ECF Nos. 109; 104; 105.

## II. ANALYSIS

### A. Summary Judgment

Groupon argues in relevant part that LVSA's claims for trademark infringement, appropriation of commercial property, and unjust enrichment fail as a matter of law because LVSA did not provide evidence of consumer confusion, substantial investment in developing its mark, or conferral of a benefit on Groupon. LVSA responds generally that there are disputed facts and evidence of consumer confusion, and that Groupon failed to produce a competent FRCP 30(b)(6) witness such that more material facts could be disputed. Beyond its general assertion of disputed facts, LVSA does not rebut Groupon's arguments regarding the two common law claims.

Summary judgment is proper where a movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law."

*Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  The moving party bears the initial burden of informing the court of the basis of its motion and the absence of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When the nonmoving party has the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325; *see also Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000) (stating that the moving party can meet its initial burden by "pointing out through argument . . . the absence of evidence to support plaintiff's claim").

Once the moving party carries its burden, the nonmoving party must "make a showing sufficient to establish the existence of [the disputed] element to that party's case." *Celotex*, 477 U.S. at 322.  I view the evidence and reasonable inferences in the light most favorable to the nonmoving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

1.      **Trademark Infringement**

Under the Lanham Act, "[t]o prevail on a claim of trademark infringement . . . a party must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (simplified).  "The test for likelihood of confusion is whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 935 (9th Cir. 2015).  A reasonably prudent consumer is one who "exercise[es] ordinary caution," and that caution presumably increases where a buyer

exercises "care and precision in their purchases, such as for expensive or sophisticated items." *Id.* at 937 (simplified). The "default degree of consumer care is becoming more heightened as the novelty of the [i]nternet evaporates and online commerce becomes commonplace." *Id.* (simplified).

Likelihood of confusion "is often a question of fact," but summary judgment is appropriate where "a court can conclude that the consumer confusion alleged . . . is highly unlikely by simply reviewing the product listing/advertisement at issue." *Id.* at 939. I may grant summary judgment "without delving into any factors other than: (1) the type of goods and the degree of care likely to be exercised by the purchaser; and (2) the labeling and appearance of the products for sale and the surrounding context on the screen displaying the results page." *Id.* at 939; *see also id.* at 936-37 (holding that the eight-factor *Sleekcraft*[2] test is appropriate in cases in which competing mark designs themselves are similar, but is "not particularly apt" in cases involving "the design of [a] web page that is displaying . . . competing products for sale").

Assuming that LVSA has a protectible ownership interest in the Fyrosity mark, its trademark infringement claim fails as a matter of law because LVSA cannot establish a likelihood of consumer confusion. First, I consider the type of goods and the degree of care likely to be exercised by the relevant consumers. The service at issue here is expensive. *See* ECF No. 91-7 at 2 (showing that the top two results on the hyperlinked Groupon page cost $159 and $209, respectively). That suggests the consumers would be reasonably prudent. *Multi Time*, 804 F.3d at 937 (finding that watches sold online "for hundreds of dollars" were sufficiently expensive to find consumers reasonably prudent as a matter of law). While cost alone was sufficient for the *Multi Time* court to find consumers reasonably prudent, skydiving service is

---

[2] *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979).

uniquely dangerous.  Because potential skydivers entrust their lives to the service provider, the service is "sophisticated" in a way that the goods (watches) in *Multi Time* were not. *Id.* at 937. Thus, a consumer is likely to exercise more caution in selecting a skydiving provider.

The Ninth Circuit recognized in 2015 that the prudence of online consumers would increase over time as the novelty of online shopping wanes. *Id.*  Nearly seven years have passed since the Ninth Circuit's recognition of this eventuality, and consumers are undoubtedly more accustomed to online shopping today, especially after the explosion of online shopping during the COVID-19 pandemic.  Therefore, as a matter of law, I find that reasonably prudent consumers engage in the purchase of the relevant service here. *See id.* at 939.

Second, I consider the labeling, appearance, and general context of the screen displaying search results.  Like in *Multi Time*, each result on Groupon's page was clearly labeled with the service provider's name. *See* ECF No. 91-7 at 2 (showing the top two results as "Skydive Mesquite" and "Sin City Skydiving," each with a different geographic indicator beneath the service provider name to show the provider's operating location); *see also Multi Time*, 804 F.3d at 937-38 (finding that Amazon's labeling of products by name and manufacturer was enough to guard against a likelihood of confusion).

While LVSA argues that its Fyrosity mark appears multiple times on the results webpage, the same labels and "breadcrumbs" tracking search criteria existed in *Multi Time*, but these were insufficient to establish a likelihood of confusion where Amazon properly labeled individual results. *Id.* at 933-34, 940.  LVSA also argues that Groupon fails to prominently display the message: "No matching deals. You may also like . . . ." *See* ECF No. 91-7 at 2.  However, the Ninth Circuit has rejected the idea that Groupon must explicitly mention that no results match the search criteria. *Multi Time*, 804 F.3d at 938.  Therefore, no genuine factual dispute remains,

and Groupon's webpage was clearly and sufficiently labeled such that a reasonably prudent consumer would not likely be confused as to whether the displayed results were attributable to LVSA.

LVSA also argues that evidence of actual confusion exists, which is enough to carry its burden to demonstrate a likelihood of confusion under the Lanham Act. However, "a showing of actual confusion among significant numbers of consumers" is necessary to support a finding of a likelihood of confusion. *Id.* at 939-40. Here, when LVSA's owner was asked whether he could "list any instances of actual confusion" stemming from the Facebook post, he stated "[t]hat's not provable[,] I don't know." ECF No. 91-8 at 11. His wife similarly testified that she could not speak to a single example of a customer who was confused by the link. ECF No. 91-11 at 6. While the owner testified that LVSA receives "10 to 14 phone calls on a daily basis" from customers who mention Groupon, nothing in the record indicates that these calls relate to the Facebook post or the linked search results. ECF No. 97-12 at 147. LVSA's owner testified that those calls come "from customers who have already purchased a voucher from Groupon and want to redeem the voucher with our company." *Id.* When asked to expand on the context of these alleged calls, he explained that "Groupon has been destroying our industry for 11 years," thus suggesting that to the extent actual consumer confusion exists, it predates the 2018 Facebook post at issue here. *See id.* at 166; ECF No. 97-1 at 3.

LVSA also provides a screenshot of a brief text message exchange in which a prospective customer mentions Groupon. ECF No. 97-13. Nothing in the record attributes this exchange to the instant dispute. Instead, LVSA's owner testified that this message was preceded by a phone call in which the customer asked LVSA to match a competitor's price listed on Groupon. ECF No. 97-12 at 151. There is no evidence that the customer mentioned the Facebook post or

8

Groupon results page, and no other evidence attributes the customer's price-matching request to the instant dispute.

The record may demonstrate that, on a regular basis and independent of the disputed Facebook comment and hyperlinked Groupon page, prospective customers try to bargain with LVSA based on pricing found on Groupon. The record may likewise show that consumers sometimes mistakenly seek to redeem vouchers for other skydiving companies with LVSA. But there is no evidence from which a reasonable jury could attribute these interactions to the Facebook post or Groupon results page such that LVSA can show significant actual confusion. I therefore grant Groupon's motion for summary judgment as to LVSA's trademark infringement claim because, as a matter of law, a reasonably prudent consumer in this marketplace is unlikely to be confused as to the origin of the service offered.

### 2. Misappropriation of Commercial Property

Nevada has not yet recognized a claim for misappropriation of commercial properties. For the purpose of this motion, though, I follow other decisions of this court that have suggested that the Supreme Court of Nevada would recognize such a claim. *See, e.g.*, *Salestraq Am., LLC v. Zyskowski*, No. 2:08-cv-01368-LRH-LRL, 2009 WL 1652170, at *3 (D. Nev. June 10, 2009), *aff'd*, 334 F. App'x 125 (9th Cir. 2009) (noting that Nevada recognizes claims closely related to commercial misappropriation and that California, which Nevada has followed when recognizing new commercial tort theories, recognizes a claim for misappropriation of non-trade-secret information).

Under California law, a plaintiff must show that "(a) the plaintiff invested substantial time, skill or money in developing its property; (b) the defendant appropriated and used the plaintiff's property at little or no cost to the defendant; (c) the defendant's appropriation and use

9

of the plaintiff's property was without the authorization or consent of the plaintiff; and (d) the plaintiff can establish that it has been injured by the defendant's conduct." *Id.* (simplified).

LVSA provides no evidence that it invested substantial time, skill, or money in developing its trademark. It pleads that it has. ECF No. 1 at 8-9. But nothing in the record substantiates the allegation such that a reasonable jury could find in LVSA's favor. LVSA did not respond to this portion of Groupon's motion, so it did not point to evidence sufficient to raise a genuine dispute on this essential element. I therefore grant Groupon's motion for summary judgment as to LVSA's misappropriation of commercial property claim.

### 3. Unjust Enrichment

Under Nevada law, "[u]njust enrichment occurs when one party confers a benefit on a second party which accepts and retains the benefit under circumstances such that it would be inequitable to retain the benefit without paying for its value." *Sierra Dev. Co. v. Chartwell Advisory Grp., Ltd.*, 223 F. Supp. 3d 1098, 1107 (D. Nev. 2016) (citing *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 257 (Nev. 2012)). "The doctrine of unjust enrichment or recovery in quasi contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another or should pay for." *Id.*

LVSA provides insufficient evidence of a benefit conferred on Groupon such that a reasonable jury could find in its favor. LVSA alleges that Groupon's Facebook comment and the hyperlinked page confused prospective customers, diverting them to skydiving offers from LVSA's competitors and drumming up business for Groupon. LVSA provides no evidence of actual confusion attributable to this dispute. And even if it could establish confusion, it provides

no evidence that this confusion resulted in a benefit that LVSA conferred on Groupon. I therefore grant Groupon's motion for summary judgment as to LVSA's unjust enrichment claim.

### B. Motion for Reconsideration of Partial Dismissal

I previously dismissed LVSA's two antitrust claims because, under 15 U.S.C. § 2, LVSA implausibly alleged that Groupon provides services that are interchangeable with its own such that LVSA and Groupon operate in the same market for purposes of establishing antitrust injury. ECF No. 30 at 3-5. LVSA moved for reconsideration of the dismissal. ECF No. 34. I denied its motion. ECF No. 55. LVSA now moves a second time for reconsideration, arguing that newly discovered evidence of a commission-earning advertising blog and Groupon's own trademark registration indicate that Groupon and LVSA compete in the same allegedly restrained market. ECF No. 109 at 3-4, 6. Groupon responds that LVSA is procedurally barred from presenting this evidence as it was easily discoverable and should have been presented sooner, and that this evidence does not change the conclusion that the parties are not competitors in the same market. ECF No. 111 at 2.

I may "reconsider an interlocutory order for cause." Local Rule 59-1(a). Reconsideration "also may be appropriate if (1) there is newly discovered evidence that was not available when the original motion or response was filed, (2) the court committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Id.* "Motions for reconsideration are disfavored" and a movant should not unnecessarily repeat past arguments. 59-1(b). Reconsideration is also an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (simplified).

1          While LVSA presents new evidence pursuant to Local Rule 59-1(a), that evidence does not change my conclusion that LVSA and Groupon do not compete in the same market such that LVSA can plausibly allege an antitrust injury.  In analyzing whether parties participate in the same market, I consider the "reasonable interchangeability of use or the cross-elasticity of demand between the services provided" by the parties. *Bhan v. NME Hospitals, Inc.*, 772 F.2d 1467, 1471 (9th Cir. 1985); *see also Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 512 F.2d 1264, 1271 (9th Cir. 1975) ("[W]here there is a high degree of substitutability in the use of two commodities, it may be said that the cross-elasticity of demand between them is relatively high, and therefore the two should be considered in the same market.").  Here, the relevant service alleged is "the experience of jumping out of an airplane while tethered to an experienced parachutist." ECF No. 1 at 3.  Therefore, other tandem skydiving businesses in southern Nevada compete in the same market as LVSA.

          It is immaterial that Groupon allegedly maintains a commission-based relationship with the advertising blog Vegas Food and Fun and that LVSA provides tickets[3] to its customers. Neither the relationship with the blog nor LVSA's sale of tickets alters the fact that Groupon does not itself provide skydiving services. *See Mercy-Peninsula Ambulance, Inc. v. Cnty. of San Mateo*, 791 F.2d 755, 759 (9th Cir. 1986) (affirming dismissal of Section 2 claim because, while a county granted contracts for paramedic services, it provided no health care services and was thus not a competitor in the health care provision market); *Barton & Pittinos, Inc. v. SmithKline*

---

[3] LVSA seems to argue that, because Groupon's trademark describes the provision of "tickets" for "events and activities" as a service it provides, and because LVSA also, either impliedly or actually, provides tickets to its skydiving customers, then Groupon and LVSA must compete in the same ticket-provision market. *See* ECF No. 109-4 at 2.  I do not decide whether LVSA's ticket-provision theory could sustain an antitrust cause of action because LVSA pleaded that the relevant service at issue here is the provision of skydiving experiences, not tickets.

*Beecham Corp.*, 118 F.3d 178, 182-83 (3d Cir. 1997) (holding that a marketing company involved in a program providing vaccines to nursing homes did not compete in the same market as vaccine-providing pharmacists because the marketing company did not itself provide the relevant vaccine service; instead, the marketing company relied on other members of the program for actual vaccine distribution.).

Not only do LVSA's new allegations fail to change my ruling on whether LVSA can plausibly allege antitrust injury, but LVSA could have discovered the bases for these allegations far sooner. LVSA, in alleging antitrust claims against Groupon, should have reviewed Groupon's mark early on, and a simple Google search for "sky diving providers Las Vegas" returns a result for the Vegas Food and Fun blog on the first results page. Yet LVSA raises this evidence and related argument for the first time two years after my original dismissal ruling and nine months after the close of discovery. Interests in finality and the conservation of judicial resources weigh heavily against reconsideration. *See Kona*, 229 F.3d at 890. I therefore deny LVSA's motion for reconsideration of my order dismissing its antitrust claims.

### C.  Leave to File Late Objection

Because of my decisions above, LVSA's motion for leave to file an untimely objection and its motion for reconsideration of discovery motions are effectively moot. *See* ECF Nos. 104; 105. The discovery disputes relate to the existence of LVSA's mark in Groupon's metadata, which speaks only to the extent and manner of Groupon's use of the mark. My decisions here do not involve the metadata dispute, and instead implicate essential elements of LVSA's claims that it must prove in addition to mark use. Even if I resolved each discovery motion in LVSA's favor, I would still deny reconsideration of the dismissal of the antitrust claims and grant Groupon's motion for summary judgment on the other claims.

And even if LVSA's motion was not moot, I would deny it. LVSA moved to strike Groupon's rebuttal expert's report, arguing that the report was effectively an improperly delayed initial report. ECF No. 78 at 2-3. Magistrate Judge Ferenbach denied the motion. ECF No. 103. LVSA now seeks leave to file a late objection to Judge Ferenbach's ruling, arguing that its failure to timely object was due to excusable neglect. ECF No. 104 at 3. If I grant LVSA leave to untimely object, it intends to argue that Judge Ferenbach erroneously found the report to be permissible rebuttal because the report exceeds the scope of rebuttal and should have been introduced as an initial report. ECF No. 104-1 at 6-9. Groupon responds that LVSA's neglect is not excusable and that the objection would fail on the merits anyhow. ECF No. 106 at 2.

Under Federal Rule of Civil Procedure 6(b)(1)(B), "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." *See also Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (discussing factors to consider in determining whether a party's failure to timely act constitutes excusable neglect). If I grant a party leave to file an untimely objection, I consider whether "it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); LR IB 3-1(a).

LVSA's untimely objection would fail on the merits. I have reviewed the objection, Judge Ferenbach's ruling, and the underlying papers. Judge Ferenbach's ruling is not "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); LR IB 3-1(a). I therefore affirm Judge Ferenbach's ruling and deny LVSA's motion for leave to file an untimely objection.

/ / / /

/ / / /

### D. Objections

Similarly, even if LVSA's objections were not moot, I would deny them. LVSA twice moved to compel competent FRCP 30(b)(6) deponents and it renewed its motion for spoliation sanctions. ECF Nos. 84; 87; 96. Magistrate Judge Ferenbach denied the motions to compel because they were untimely and because LVSA did not raise any deponent-related issues in a joint status report ordered by the court to highlight all remaining discovery disputes. ECF No. 103. He likewise denied the motion for renewed spoliation sanctions because no evidence indicated that the allegedly spoliated evidence ever existed and LVSA presented no evidence that Groupon acted negligently or made a calculated effort to frustrate discovery. *Id.*

LVSA now moves for reconsideration of Judge Ferenbach's rulings, arguing that the motions to compel were timely and that sufficient evidence indicated that the allegedly spoliated evidence existed. ECF No. 105. I have reviewed the objections, Judge Ferenbach's rulings, and the underlying papers. Judge Ferenbach's rulings are not clearly erroneous or contrary to law. I therefore affirm Judge Ferenbach's rulings and deny LVSA's motion for reconsideration of the discovery motions.

## III. CONCLUSION

I THEREFORE ORDER that Defendant Groupon, Inc.'s motion for summary judgment **(ECF No. 91) is GRANTED**.

I FURTHER ORDER that Plaintiff Las Vegas Skydiving Adventures LLC's motion for leave to file late objection **(ECF No. 104) is DENIED**.

I FURTHER ORDER that LVSA's first and second motions for reconsideration **(ECF Nos. 105 and 109) are DENIED**.

I FURTHER ORDER the clerk of court to enter judgment in favor of defendant Groupon, Inc., and against plaintiff Las Vegas Skydiving Adventures LLC, and to close this case.

DATED this 26th day of February, 2022.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE